<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PEDIATRIC AFFILIATES, P.A., | : | CIVIL ACTION NO. 05-3108 (MLC) |
|  | : |  |
|     Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
|     v. | : |  |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
| et al., | : |  |
|  | : |  |
|     Defendants. | : |  |
|  | : |  |

<u>**COOPER, District Judge**</u>

    Defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint seeking a redetermination of the plaintiff's tax liability.  The Court, for the reasons state herein, will grant the motion.

<u>**BACKGROUND**</u>

    Plaintiff, Pediatric Affiliates, P.A. ("Pediatric"), is a New Jersey professional corporation that provides pediatric medical services.  (Compl., at ¶ 1.)  Around 1994, Pediatric hired PAL Data ("PAL") to service Pediatric's payroll accounting needs.  (<u>Id.</u> at ¶ 9.)  Pediatric, not PAL, however, paid its quarterly payroll taxes directly to the Internal Revenue Service ("IRS").  (<u>Id.</u> at ¶ 11.)  Pediatric asserts that around 1998, the IRS changed its payroll tax regulations to require businesses to electronically transfer their tax payments to a depository service or independent payroll tax service.  (<u>Id.</u> at ¶ 13.)

Then, the service would submit the tax payments to the IRS.[1]
(Id.)  Pediatric retained PAL to pay its payroll taxes. (Id. at ¶
17.)

Unknown to Pediatric, Menachem Hirsch ("Hirsch"), the
founder of PAL, embezzled the tax payments that Pediatric and
other clients transferred to PAL.[2]  (Id. at ¶ 14.)  Hirsch would
prepare and send to Pediatric a tax form that reflected
Pediatric's actual tax liability.  (Id. at ¶ 15.)  Pediatric
then, would transfer money in the amount of its tax liability to
Hirsch.  (Id.)  Hirsch, however, would also prepare a tax form
that reflected an understated tax liability.  (Id. at ¶ 15.)  He
sent the understated form and amount to the IRS, and invested the
difference between the amount he received from Pediatric and the
amount sent to the IRS in a personal hedge fund.  (Id.)

Pediatric received notice from the IRS in 2002 that it had
underpaid its payroll taxes in 1999 and 2000.  (Id. at ¶ 19.)
Pediatric (1) reviewed its withdrawal records, (2) found that
there was no discrepancy between the amount of funds transferred
and its tax liability, and (3) concluded that the IRS notice was
an error.  (Id. at ¶¶ 19-20.)  The IRS then sent second and third

_____

[1] Pediatric, in the complaint, and brief opposing the
present motion provide no citation, or specific reference as to
what regulation was changed.

[2] Menachem Hirsch is also known as Samuel Hirsch.  (See Pl.
Ex. A, at ¶ 1.)

notices of delinquency to Pediatric.  (Id. at ¶¶ 21, 24.)  Again,
Pediatric checked its records and found no discrepancy between
the amount owed and amount paid.  (Id. at ¶ 21-26.)  The IRS
finally sent Pediatric documents that reflected a discrepancy
that was not apparent based on the information Pediatric was
given by PAL.  (Id. at ¶ 27.)  Pediatric contacted Hirsch and was
told that Hirsch had misappropriated the funds Pediatric had
transferred to Hirsch.  (Id. at ¶ 30.)

The United States brought criminal charges against Hirsch in
the United States District Court for the Southern District of New
York in December 2004.  (Pl. Ex. A.)  He was charged with wire
fraud and tax evasion.  (Id.)  The indictment alleged that Hirsch
converted over $ 2,314,000.00 of over 50 clients' funds, and
filed over 160 false and fraudulent tax forms.  (Id.)  Hirsch (1)
pled guilty to both counts, (2) was assessed monetary penalties,
and (3) sentenced to serve thirty-seven months in prison.  (Pl.
Ex. 3.)

Pediatric brought an action in the District of New Jersey
against PAL and Hirsch, on July 25, 2002.[3]  (Dkt. no. 02-3589
(GEB).)  Pediatric asserted claims for fraud and violations of
the Racketeering Influenced and Corrupt Organizations Act

---

[3] Pediatric also named Sol Hirsch, Menachem's father, as a
defendant because it asserted that he was a principal of PAL.
(Compl., dkt. no. 02-3589.)  Sol Hirsch, however, was terminated
as a party on June 6, 2003.  (Dkt. no. 02-3589, entry no. 19.)

("RICO"), and sought monetary damages.  (Compl., dkt no. 02-
3589.)  Default judgment was entered in Pediatric's favor in the
amount of $1,204,183.21, on August 21, 2003.  (Dkt. no. 02-3589,
entry no. 25.)

The IRS sent Pediatric notices of its intent to levy on
Pediatric's assets on March 24, 2003.  (Compl., at ¶ 46.)  The
IRS sought the taxes Pediatric still owed from 1999 and the first
quarter of 2000 due to Hirsch's underpayment.  (Id.)  Pediatric
requested a Collection Due Process Hearing ("CDPH") in August
2004.  (Id. at ¶ 47.)  It asserted that it was not liable for
past due payroll taxes, or the interest charges it was assessed,
because Hirsch embezzled its tax payments.  (Id. at ¶¶ 47-48.)
Following the hearing, the Appeals Office of the IRS determined
that the levy notice was proper, and Pediatric was liable to pay
the taxes owed and interest.  (Id. at ¶¶ 53-54.)  Pediatric
brought an action in this Court, on June 17, 2005, seeking a
redetermination of the IRS collection action resulting from the
CDPH.

## **DISCUSSION**

Defendants argue the complaint should be dismissed because
Pediatric is liable to pay (1) the taxes it owes as a matter of
law, and (2) the interest it owes on its taxes because
Pediatric's tax deficiency is not attributable to an error or
delay of the IRS.  (Defs. Br., at 1-2.)  Pediatric argues that it

4

is not responsible for the tax or interest at issue because (1) it paid the taxes it owed to PAL, (2) Pediatric is not responsible for Hirsch's subsequent embezzlement of those funds, and (3) the United States is judicially estopped from recovering payroll taxes from Pediatric.  (Pl. Br., at 16-17.)  It argues that the government's "recovery" in this matter was the conviction and incarceration of Hirsch.  (Id.)  To enforce Pediatric's tax liability in addition to incarcerating Hirsch would amount to a double recovery for the United States.  (Id.)

## I.   Jurisdiction of the District Court to Redetermine CDPH Appeals

Section 6330 of the Internal Revenue Code ("the Code") provides a taxpayer with the right to a CDPH before a levy is made on the taxpayer's property or right to property.  26 U.S.C. § 6330(a).  The district court has jurisdiction to review determinations of a CDPH when the subject matter of the CDPH is not within the jurisdiction of the Tax Court.  Reid & Reid, Inc. v. United States, 366 F.Supp.2d 284, 287 (D. Md. 2005); see also Garage v. United States, No. 04-1133, 2005 WL 3610064, at *2 (D.N.J. Nov. 22, 2005) (noting that the district court's jurisdiction was contingent upon the Tax Court lacking jurisdiction).

Section 6330 provides: "[t]he person may . . . appeal such determination (A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matters);

or (B) if the Tax Court does not have jurisdiction over the underlying tax liability, to a district court of the United States." 26 U.S.C. § 6330(d). The Tax Court has jurisdiction over issues related to income taxes, but does not have jurisdiction as to employment or payroll taxes. See 26 U.S.C. § 7442 (establishing that the Tax Court has jurisdiction as enumerated in chapters 1-4 of the Code which concern income taxes); John H. Berkey P.C. v. Dep't of Treas., No. 00-75149, 2001 WL 1397680, at *2 (E.D. Mich. Sept. 20, 2001) (noting that the Tax Court has jurisdiction over income tax issues but not issues related to withholding taxes, unemployment taxes, or FICA/Social Security taxes).

Pediatric challenges the IRS's determination that it is liable for unpaid payroll taxes. The Tax Court therefore does not have jurisdiction over Pediatric's underlying tax liability, and the exercise of jurisdiction by this Court is appropriate. See Reid & Reid Inc., 366 F.Supp.2d at 287 (noting that the district court's exercise of jurisdiction was proper because the disputed tax liability covered federal unemployment taxes, trust fund taxes, and an excise tax).

## II. Standard of Review

### A. 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). On a

motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted."  Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may not "consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint.  Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.   Review of Determinations of a CDPH**

The district court has the authority to review issues that were raised in a CDPH.  Garage, No. 04-1133, 2005 WL 3610064 at *3.  Issues not raised in a CDPH cannot be considered.  26 C.F.R. § 301.6330-1(f)(2)(A-F5).  The district court reviews CDPH

determinations de novo if the underlying tax liability is in dispute.  Garage, No 04-1133, 2005 WL 3610064, at *3; see also Tornichio v. United States, 263 F.Supp.2d 1090, 1095 (N.D. Ohio 2002).  If the underlying tax liability is not the subject of the appeal, the district court reviews a CDPH determination for abuse of discretion.  Id.

Pediatric, in its CDPH, challenged its underlying tax liability, and the interest charges assessed for failure to timely to file its taxes.  (Pl. Br., at 9; Pl. Ex. B.)  This Court, therefore reviews the IRS determination de novo.[4]

## III. Pediatric's Tax Liability

### A.    The Legal Standard

The IRS has (1) determined that Pediatric failed to pay the taxes owed for the tax year 1999, and the first quarter of 2000, and (2) assessed penalties and interest fees associated with the deficiencies.  (Pl. Ex. B; see 26 U.S.C. §§ 6601, 6651.) Pediatric argues that it has no remaining tax liability.  It paid the taxes it owed in full to Hirsch, and is not responsible for Hirsch's embezzlement of Pediatric's funds and his failure to pay the IRS.  (Pl. Br., at 9.)

---

[4] Pediatric, in the complaint, seeks review of its tax liability, and the interest and penalties assessed against it. (Compl., at ¶ 58.)  However, because Pediatric did not challenge the penalty assessment in its CDPH, this Court therefore cannot consider or review the penalty assessment.  (See Compl., at ¶ 48; Pl. Ex. B, Attachment to Letter 3194-Relevant issues presented by the taxpayer.)

To be excused for failure to timely pay taxes owed, a taxpayer must show that the failure (1) did not result from willful neglect, and (2) was due to reasonable cause. United States v. Boyle, 469 U.S. 241, 244 (1985); see also Am. Biomaterials Corp. v. Creative Care Sys., 954 F.2d 919, 923 (3d Cir. 1992). Willful neglect is a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. Reasonable cause exists if the taxpayer exercised "ordinary business care and prudence, but nevertheless was unable to file the return within the prescribed time." Id. at 246 (internal quotes omitted); see also Universal Concrete Prod., Corp. v. United States, No. 89-7833, 1990 WL 106584, at *3 (E.D. Pa. July 24, 1990) (noting that a company's "failure to implement internal checks and controls over the employee responsible for tax obligations demonstrates a lack of ordinary business care" and is not reasonable cause to excuse tax liability).

### 1.   Reliance on an Agent is not Reasonable Cause

Late filings may be excused when the delay is due to circumstances beyond the taxpayer's control, including postal delays and illness. Boyle, 469 U.S. at 249. The Supreme Court, however, has established a bright-line rule that reliance on an agent is not a reasonable cause and does not excuse a taxpayer's failure to timely file a tax return. Id. at 252. In Boyle, the taxpayer relied on an attorney to prepare and file a tax return

on behalf of the estate for which the taxpayer was the executor.
Id. at 242.  Holding that reliance on an attorney does not excuse
a late filing, the Supreme Court emphasized that Congress has
placed the burden on the taxpayer to ensure the timely filing of
tax returns.  Id. at 249.  Reliance is not a substitute for
compliance with the tax statutes.  Id. at 251.  The situation may
differ if a taxpayer relies on the erroneous advice of counsel
with respect to a question of law, but no special training or
effort is needed to determine a tax deadline, and make sure that
the deadline is met.  Id. at 252.

Reliance on a bookkeeper, controller, or outside payroll
service also does not qualify as reasonable cause to excuse the
failure to pay taxes.  See Huffman, Carter & Hunt, Inc. v. United
States, 317 F.Supp.2d 816, 822 (S.D. Ohio 2004) (embezzlement by
taxpayer's outside payroll tax service was not reasonable cause
to abate tax penalties); Mason Motors Co. v. United States, 8
F.Supp.2d 1177, 1181 (D. Minn. 1998) (bookkeeper's failure to
properly submit taxes did not qualify as reasonable cause to
excuse liability); San Diego Drywall Inc. v. United States, No.
90-0829, 1993 WL 477942, at *3 (S.D. Cal. Sept. 13, 1993) (noting
that embezzlement by the comptroller was not reasonable cause to
avoid tax liability).  When the taxpayer is a corporation, it
only acts through its agents and employees, and it "cannot rely
upon those agents or employees, acting within their scope of

10

authority, to escape responsibility for the nonperformance of nondelegable tax duties." Conklin Bros. of Santa Rosa, Inc. v. United States, 986 F.2d 315, 318 (9th Cir. 1993); see also Valen Mfg. Co. v. United States, 90 F.2d 1190, 1193 (6th Cir. 1996). For example, in Conklin, the tax deficiency resulted from the improper conduct of the office manager who was assigned to pay the company taxes. Conklin Bros., 986 F.2d at 315. The manager, however, was subject to supervision by the company president. The Ninth Circuit noted that while it may have been reasonable to not closely monitor the manager, the company is not absolved of liability for failure to pay its taxes. Id. at 318-19; see also Valen Mfg. Co., 90 F.3d at 1193 (holding that bookkeeper's "circumvention of institutional controls" did not disable a company from paying the payroll taxes it owed).

A payroll service, while not an "employee" of a company like a bookkeeper or manager, is a third-party agent of the company. The Code allows an employer to designate agents to act on behalf of the employer to perform duties such as payment of employee wages, and company payroll taxes. See 26 U.S.C. § 3504; 26 C.F.R. § 31.3504. Section 3504 provides that "all provisions of law (including penalties) applicable in respect of an employer shall be applicable to a fiduciary, agent, or other person so designated." 26 U.S.C. § 3504. An agent, however, is only jointly and severally liable for a company's payroll taxes if the

11

agent actually had "control, receipt, custody, or disposal of, or pays the wages of an employee or group of employees." 26 U.S.C. § 3504; see also Morin v. Frontier Bus. Tech., 288 B.R. 663, 671-72 (W.D.N.Y. 2003) (holding that agent was not liable for payroll taxes because it never had actual control over the funds used to pay employee wages). Additionally, the form that a taxpayer must fill out to authorize an agent to make tax payments on its behalf contains an agreement that provides, "I understand that this agreement does not relieve me, as the taxpayer, of the responsibility to ensure that all tax returns are filed and that all deposits and payments are made." (Tax Form 8655, Reporting Agent Authorization.)

### 2.   Embezzlement by an Agent

Reliance on an agent does not constitute reasonable cause even when the agent embezzles a company's tax payments. See Huffman, Carter & Hunt, Inc., 317 F.Supp.2d at 821-22; Classic Printing Inc. v. United States, No. 99-2015, 2001 WL 283799, at *8-9 (M.D. Pa. 2001). In Huffman the plaintiff contracted with an outside payroll service to fulfill its employment tax obligations. 317 F.Supp.2d at 817. In Classic Printing, the plaintiff assigned tax-paying responsibilities to its bookkeeper. No. 99-2015, 2001 WL 283799 at *2. In both cases, the tax-paying agent embezzled money from the taxpayer. Despite the criminal nature of the agents' conduct, the plaintiffs' failure to pay

12

their taxes was not excused.  The plaintiffs were responsible for overseeing the acts of their agents, and bore the ultimate responsibility and control over their tax obligations.  <u>Huffman</u>, 317 F.Supp.2d at 822; <u>Classic Printing</u>, No. 99-2015, 2001 WL 283799, at *6 (recognizing that although reliance on a trusted employee was understandable, and the betrayal "sad and unfortunate," the company was not prevented from fulfilling its tax obligations because managerial control over the company did not rest with the employee).

Reliance on an agent or particular employee to properly pay a company's taxes is not reasonable cause because the agent's failure to do so does not render the company unable to fulfill its tax obligations.  <u>See e.g.</u> <u>Valen Mfg. Co.</u>, 90 F.3d at 1193 (noting that the company was able to pay its taxes because it immediately paid its taxes, including penalties, after discovery of its bookkeeper's misconduct and failure to pay); <u>Conklin Bros.</u>, 986 F.2d at 316 (company relied on controller to pay its taxes, but the misconduct did not disable the company from paying its taxes because it had sufficient funds to make tax payments and deposits).  The Third Circuit, however, has recognized one situation in which misconduct on the part of the designated taxpaying party incapacitated the company, and rendered it unable to pay its taxes.  <u>Am. Biomaterials Corp.</u>, 954 F.2d at 927.  In <u>American Biomaterials</u>, the corporation's chief financial officer

13

("CFO") and chief executive officer ("CEO") were responsible for paying the company's payroll taxes. Id. at 922. Instead of paying the taxes, the officers embezzled the money. Id. The Third Circuit recognized that the CEO and CFO were the sole people in control of the corporate structure. Id. at 923. Unlike a bookkeeper, manager, or payroll service, who is supervised by, or under the authority of, a more senior employee, supervision over the officers was not possible. See e.g. Valen Mfg. Co., 90 F.3d at 1194 (holding company liable for failure of bookkeeper noting that executive officers of the company retained both oversight and ultimate responsibility for tax liabilities). The officers' misconduct and failure, therefore, did disable the company from appropriately paying its taxes. Am. Biomaterials, 954 F.2d at 922-23; see also Valen Mfg. Co., 90 F.3d at 1194 (noting that the company in American Biomaterials was incapacitated by the conduct of its officers because they were "the very two individuals with ultimate control over the company's taxpaying activities"); Conklin Bros, 986 F.2d at 318 (holding company liable for taxes because its bookkeeper's misconduct was not beyond company control, unlike the situation in American Biomaterials in which the conduct was beyond the corporation's control because the embezzlement was by corporate officers); Classic Printing Inc., No. 99-2015, 2001 WL 283799, at *8 ("In Biomaterials, the criminal conduct committed by the

14

corporate officers . . . was beyond the corporation's control because they were the control people in the corporate structure").

**B.   Application to Pediatric**

Pediatric has not shown that its failure to pay its payroll taxes for the year 1999 and first quarter of the year 2000 was the result of reasonable cause.[5]   Pediatric entrusted its payroll taxpaying obligations to PAL and Hirsch.   As established in Boyle, Pediatric's reliance on Hirsch, and Hirsch's subsequent failure to properly perform the task assigned does not amount to reasonable cause.

Pediatric's situation is analogous to that of the plaintiff in Huffman.   The plaintiff in Huffman relied on an outside payroll service.   The service embezzled the plaintiff's funds, resulting in tax deficiencies and penalties.   Similarly, Pediatric relied on Hirsch.   Assuming, as the court did in Huffman, that Pediatric exercised prudence in selecting and monitoring Hirsch, Pediatric still bears the ultimate responsibility to ensure its taxes are properly paid.   Reliance

---

[5] The United States does not argue that Pediatric's failure to pay its taxes was the result of willful neglect.   Nothing presented to the Court raises an inference of willful neglect. Therefore, for the purposes of this opinion, the Court will (1) assume Pediatric did not willfully neglect its tax liability, and (2) focus on whether Pediatric has shown reasonable cause for its failure to pay.

on Hirsch did not render Pediatric unable to fulfill its tax
obligations.

Unlike the embezzlers in <u>American Biomaterials</u>, Hirsch was
not a corporate officer or in a position of authority.  He did
not have final control over Pediatric's taxpaying duties.  Hirsch
was only an employee of an outside company who worked for
Pediatric.  He was an agent of Pediatric hired to "service
Pediatric Affiliates' payroll tax needs."  (Compl., at ¶ 17.)
Hirsch is not jointly and severally liable because there is no
assertion or indication that Hirsch had control, custody, or paid
Pediatric's wages.  Pediatric's reliance on Hirsch is
understandable, and the subsequent misconduct "sad and
unfortunate," but such reliance does not absolve Pediatric of its
tax obligations.  <u>See</u> <u>Classic Printing</u>, No. 99-2015, 2001 WL
283799, at *6.

## IV.  Pediatric's Estoppel Arguments

### A.   Judicial Estoppel

Pediatric contends that the United States cannot argue that
Pediatric is liable for its taxes because the doctrine of
judicial estoppel bars such an argument.  (Pl. Br., at 16.)
Judicial estoppel is an equitable doctrine that is invoked at the
discretion of the court.  <u>New Hampshire v. Maine</u>, 532 U.S. 742,
750 (2001).  It is a general rule that "a party to litigation
will not be permitted to assume inconsistent or mutually

16

contradictory positions with respect to the same matter in the same or successive series of suits." Scarano v. Cent. R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953) (internal quotes and cite omitted); see also New Hampshire, 532 U.S. at 749 ("this rule . . . prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument in another phase").  The doctrine should only be applied "in a narrow category of cases because it is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice." Dam Things From Den. Co. v. Russ Berrie Co., 290 F.3d 548, 559-60 (3d Cir. 2002).  Judicial estoppel is appropriate when (1) a party asserts a later position that is clearly inconsistent with an earlier position, (2) a court accepted the earlier position so that judicial acceptance of the later position would create the perception that one of the courts was misled, and (3) the party seeking to assert an inconsistent opinion would gain an unfair advantage or impose an unfair detriment on the opposing party. New Hampshire, 532 U.S. at 750; see also Dam Things from Den. Co., 290 F.3d at 559 (noting that judicial estoppel is appropriate if the party changed its position in bad faith).

Hirsch was charged and pled guilty to wire fraud and tax evasion.  The United States asserted that Hirsch "unlawfully, willfully, and knowingly, did attempt to evade and defeat a

17

substantial part of the federal payroll taxes due and owing by the corporate clients of PAL Data." (Pl. Ex. A, at ¶ 9.) Following Pediatric's CDPH, the IRS determined that Pediatric was liable for its unpaid taxes, interest, and penalties because Hirsch's embezzlement was not a reasonable cause to excuse Pediatric's failure to pay. (Pl. Ex. B.) The United States, in the present motion, also argues that Pediatric is still liable for its taxes despite Hirsch's embezzlement. (Defs. Br., at 2.)

The doctrine of judicial estoppel is not applicable in this case. The United States' assertion that Pediatric is still liable for its unpaid taxes, despite Hirsch's embezzlement, is not "clearly inconsistent" with its assertion in Hirsch's criminal case that Hirsch evaded the payroll taxes that were owed by Pediatric. As discussed at length in Section III.A, supra, delegating taxpaying responsibilities to an employee or agent does not absolve the taxpayer of tax liability. Liability for tax evasion, however, is not limited to the taxpayer. "Any person" who willfully attempts to evade or a defeat a tax obligation can be penalized. 26 U.S.C. § 7201. Therefore, it is not contradictory for the government to seek to (1) criminally penalize Hirsch for evasion of payroll taxes including those of Pediatric, and (2) be paid the taxes it is owed by Pediatric.

Pediatric argues that it will suffer a detriment because it will be obligated to pay its payroll taxes twice. (Pl. Br., at

17.)  This argument, however, is incorrect.  Pediatric paid money to Hirsch to cover its tax liability, but due to Hirsch's embezzlement, Pediatric did not appropriately pay the IRS in full.  Pediatric is not being forced to pay its taxes twice because the taxes the IRS seeks to collect now were not paid.

It should also be noted that Pediatric has not gone without a remedy.  Pediatric brought an action against PAL and Hirsch in this Court in July 2002, (1) asserting RICO and fraud claims, and (2) seeking monetary damages (treble and punitive) including attorneys fees, interest, and costs of suit.  (<u>Pediatric Affiliates P.A. v. PAL Automated Payroll Servs. Inc.</u>, No. 02-3589 (GEB)).  Judgement by default was entered against PAL and Pediatric was awarded $ 1,204,183.21. (8-21-03, Order for Default Judgment, Dkt. no. 02-3589.)[6]

**B.  Equitable Estoppel**

Pediatric also argues that the IRS is equitably estoped from seeking penalties and interest based on representations made by an IRS Appeals Officer during the CDPH.  (Pl. Br., at 16 n. 29.)  To succeed on an equitable estoppel argument, Pediatric must demonstrate that there was a (1) misrepresentation, (2) upon which it relied, (3) to its detriment, and (4) affirmative misconduct on the part of the government.  <u>Classic Printing</u>, No.

---

[6] As to Samuel Hirsch, the action was stayed and administratively terminated because Hirsch filed for bankruptcy protection.  (8-21-03, Order, Dkt. no. 02-3589.)

99-2015, 2001 WL 283799, at *4; see also Heckler v. Cmty. Health
Servs. of Crawford County, Inc., 467 U.S. 51, 60 (1984);
Fredericks v. Comm'r of Internal Revenue, 126 F.3d 433, 438 (3d
Cir. 1997) (noting that the Third Circuit poses the additional
burden of showing affirmative misconduct when seeking estoppel
against the government).

Not every form of misinformation by the government is
sufficient to estop the government, and not all reliance on
government statements is reasonable.  Fredericks, 126 F.3d at 438
(internal cites and quotes omitted).  Affirmative misconduct
requires more than a mere omission, negligent failure, or
erroneous oral advice from an IRS agent.  See, e.g., id.,
(recognizing that the government's conduct did give rise to
estoppel because it induced the plaintiff to sign and rely on a
form three times in three years); United States v. Pepperman, 976
F.2d 123, 131 (3d Cir. 1992) (application of equitable estoppel
requires affirmative misconduct, not mere omission or negligent
failure).  Reliance is undermined when it is based on oral
advice, unconfirmed by a writing.  Heckler, 467 U.S. at 65; see
also Fredericks, 126 F.3d at 439 (citing Heckler), United States
v. St. John's Gen. Hosp., 875 F.2d 1064, 1070 (3d Cir. 1989)
(noting that the record was devoid of any reliable evidence to
estop the government because the alleged misrepresentation was
based on inadmissible hearsay, not written correspondence).  To

20

determine if a party has suffered a detriment, the Court must consider whether the government conduct permanently deprived the party of a benefit or right to which it was entitled, and caused the party the change its position for the worse.  <u>Fredericks</u>, 126 F.3d at 445-46.

Pediatric has not shown that the government is equitably estopped from seeking interest and penalties from Pediatric.[7]  In the complaint, Pediatric contends that the Appeals Officer said (1) he could not see how it could be determined that Pediatric owed money to the IRS, (2) Pediatric should not be held responsible if the money was stolen, and (3) either Pediatric owed the money or it did not and that he would check with others in the Appeals Office and then advise.  (Compl., at 9.) Pediatric, however, provides neither documentation to support these oral statements, nor an indication as to how they induced reliance or what detriment they caused Pediatric.

Even assuming the statements were a misrepresentation, Pediatric's reliance on them was not reasonable.  The alleged statements are not documented in a writing.  The statements were made in the context of a CDPH.  The discussions in the CDPH were preliminary and non-final in nature because the final outcome would be documented in a written determination that could be

---

[7] The assessment of penalties is not being considered because the issue was not raised in the CDPH.  <u>See</u> <u>supra</u> footnote 4.

appealed to an appropriate court.  As Pediatric alleges, the Appeals Officer said he would check with others and advise.  Even accepting as true the factual allegations in the complaint, the statements of the Appeals Officer are mere erroneous advice, not affirmative misconduct.  In the absence of reliance, detriment, and affirmative misconduct, applying equitable estoppel to the government in this action is not appropriate.

### CONCLUSION

The Court, for the reasons stated supra, will grant the defendants' motion to dismiss.  An appropriate order and judgment will be issued.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge